Paul MOSKOWITZ and Frances Moskowitz, in behalf of themselves and all other parties similarly situated and circumstanced, Plaintiffs,

v.

ARTHUR ANDERSEN & COMPANY, Dorlexa Co., Howard Dulman, Individually and d/b/a Van Eck Associates, Richard Gersh, Mervyn Silver, Gerald Lee, Joseph W. Heilbrun, and "John Doe" and "Richard Roe" being fictitious, the parties intended being those persons identified in the complaint herein by such appellations, Defendants.

No. 78 Civ. 5374 (GLG).

United States District Court,
S. D. New York.

Feb. 1, 1979.

Bader & Bader, White Plains, N. Y., for plaintiffs; I. Walton Bader, New York City, of counsel.

Breed, Abbott & Morgan, New York City, Wilson & McIlvaine, Chicago, Ill., for defendant, Arthur Andersen & Co.; James D. Zirin, James R. Peterson, New York City, Charles W. Boand, Chicago, Ill., of counsel.

## OPINION

GOETTEL, District Judge:

This is an action against several directors of Frigitemp Corp. and Arthur Andersen & Co., the independent accountants for Frigitemp, involving alleged deficiencies in financial statements and in other aspects connected with Frigitemp's publicly held securities. The plaintiff brought the action, on behalf of a class of stock purchasers, in New York State Supreme Court, and the accountant defendant removed it to this court.

The plaintiff now moves to remand, and the motion brings into focus the relationship between two occasionally competing policies—one which promotes the dual existence of state and federal courts and one which encourages the conservation of judicial resources. The motion also produces the anomalous situation of an accountant defendant seeking to be included in a federal securities fraud case, rather than making the usual argument that it has been named in a federal fraud action on vague allegations that amount to no more than a charge of negligence or professional malpractice. *See, e. g., Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). True to tradition, but perhaps contrary to its theory of removal, Andersen has cross-moved to dismiss the complaint for failure to plead with the particularity required by Fed.R.Civ.P. 9(b).[1]

Knowledge of the factual background is necessary to a practical understanding of the problem posed by the motion to remand to state court. In July, 1978, three purported class actions against these or similar defendants, based on the federal securities laws, were filed in this court. Shortly thereafter, those cases were consolidated, and a consolidated complaint was filed by those plaintiffs. *Litowitz v. Arthur Andersen & Co.*, 78 Civ. 3100 (GLG). Class discovery has progressed in *Litowitz*, and a motion for class certification is pending.

The instant plaintiff, or maybe more properly this plaintiff's counsel, apparently missed the boat on the federal class actions, and although the plaintiff would undoubtedly be included in the *Litowitz* class if certified, he chose rather to file a trailing action against Andersen in state court, naming some but not all of the other defendants sued in *Litowitz*, plus several additional defendants not parties in *Litowitz*. Although it clearly arises out of the same events that led to the *Litowitz* actions before this Court, the complaint expressly disavows any reliance on federal law. Instead of pleading the usual claim under section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (the "1934 Act"), the plaintiff bases his claims against Andersen solely on state statutory and common law. Two counts allege violations of New York's "securities antifraud" statutes,[2] and two more counts allege claims for professional malpractice and violations of New York common law. The *Litowitz* consolidated complaint, although based primarily on federal law, also contains similar state law claims pleaded under the rubric of pendent jurisdiction.

Andersen, faced with the prospect of defending on two different fronts, removed the instant case to this Court, presumably with the intention of moving for consolidation with the *Litowitz* actions. Such a course would no doubt reduce substantially any duplication of effort during discovery

---

1. In view of the Court's holding on plaintiff's motion to remand, Andersen's cross-motion is rendered moot.

2. N.Y.Gen.Bus.Law §§ 339–a, 352–c (McKinney 1968).

and trial. Andersen argues, in support of its position, that the plaintiff and his counsel should not be permitted to ride on the coattails of the *Litowitz* plaintiffs by maintaining an independent state action while profiting from all the discovery work occurring in federal court. In addition, Andersen says that it is unfair to force it to defendant multiple, vexatious actions in the state courts while the real work is going on here. Not only would a parallel state action increase the cost of coordinating discovery, but it would also prove a stumbling block to any settlement efforts in the federal class actions. Andersen sees the plaintiff's counsel as a scavenger, letting other plaintiffs' attorneys do his work for him and yet able to avoid sharing his benefits with the others. · Equitably, there is much to be said for Andersen's position.

■ The law, however, does not support removal, and for some good reasons. The removal statute, 28 U.S.C. § 1441(a), permits removal of any action over which this Court could have had "original jurisdiction." The only reference to securities violations in the plaintiff's various causes of action are clearly limited to state law. Although the allegations are so vague that they might be insufficient under state practice, they do not clearly set forth such facts from which it would necessarily follow that there had been a federal securities violation as well. Even if the plaintiff had pleaded a section 10(b) violation in his state complaint, however, it is also clear that the state court would not have had subject matter jurisdiction and dismissal here would be appropriate for that reason. Jurisdiction under the 1934 Act is lodged exclusively in the federal courts, 15 U.S.C. § 78aa, and since removal jurisdiction is "derivative," this Court could not acquire jurisdiction from the state court from which the case was removed. *Lambert Run Coal Co. v. Baltimore & O. RR.*, 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922). *See e. g., Banc-ohio Corp. v. Fox*, 516 F.2d 29 (6th Cir.

1975). In such a case, the proper course would be for the plaintiff to file a new federal action.[3]

Andersen argues, however, that the state law claims in plaintiff's complaint are removable because this Court already has pendent jurisdiction over the similar state law claims in *Litowitz*, and therefore, plaintiff's claims come within this court's "original jurisdiction" for purposes of the removal statute. Simply stated, there is no legal authority for this novel proposition. Andersen cites cases which support retention by a federal court of removed pendent state law claims, but only where there is clearly one removable claim which could have been brought initially in federal court. *See, e. g., Iodice v. Calabrese*, 291 F.Supp. 592 (S.D.N.Y.1968). In the instant case, if there were a federal claim pleaded, it would not be removable under *Lambert Run, supra*, so that there is no peg on which to hang pendent jurisdiction over the state law claims.

■ Moreover, the prospect that this Court may eventually exercise its pendent jurisdiction over the state law claims asserted in *Litowitz* cannot conceivably give the Court jurisdiction over every state claim filed arising out of the same events. If that were the rule, any case filed against Andersen under any state law theory would automatically be removable merely because this Court had before it a previous federal action.

Andersen has pointed to only one case which supports removal. Unsurprisingly, it is a case involving the same plaintiff's counsel as this case, engaged in an even more outrageously parasitic escapade. In *Three-J Farms, Inc. v. Alton Box Board Co.*, No. 78–1257 (D.S.C. Nov. 28, 1978), the plaintiff's state court complaint alleged various violations of South Carolina's antitrust law arising out of defendant's business in corrugated containers. Again, that plaintiff had missed the federal boat, and by the time its state complaint was filed, at least

3. It is interesting to note that had the state court complaint asserted a claim based on the Securities Act of 1933, under which state and federal jurisdiction is concurrent, removal would be prohibited by statute. *See* 15 U.S.C. § 77v(a).

thirty-seven federal cases under the Sherman Act, 15 U.S.C. § 1, had been consolidated for pretrial purposes by the Judicial Panel on Multidistrict Litigation. *In re Corrugated Container Antitrust Litigation*, 441 F.Supp. 921 (Jud.Pan.Mult.Lit.1977). Initially, the district court granted the plaintiff's motion for remand, but, on reargument, the court was informed that the plaintiff's counsel, after the remand, had served an audacious discovery demand in state court, calling for production of virtually all the documents already produced in the multidistrict discovery proceedings. This "shocked the conscience" of the district court, and made that court question whether the desire to stay in state court reflected the interest of the plaintiff, or the interest of the plaintiff's lawyer. To end the prospect of such harassing and costly duplication of effort, the court denied, on reargument, the motion to remand to the South Carolina court.

While this Court understands the practical considerations which led the *Three-J Farms* court to its conclusion, the same result is not legally supportable here. Especially in the area of securities regulation, federal courts are increasingly realizing the role of state law as a supplement to the federal statutes. *See, e. g., Superintendent of Insurance v. Freedman*, 443 F.Supp. 628, 639 (S.D.N.Y.1977), *aff'd*, No. 78–7178 (2d Cir. Dec. 14, 1978). To some extent, the development of state law in the area has been stunted by most plaintiffs' choice of a federal forum.[4] But so long as state law is recognized as an important element in the matrix of securities regulation, state courts must be given the opportunity to respond to that challenge.

Beyond this general policy consideration, of course, the defendants in the instant case are not left without protection from vexatious and unnecessarily duplicative litigation. The state court is free to stay its case pending at least the class determination here, and possibly pending completion of

discovery and factual determinations at the federal trial. In that way, needless duplication of effort is avoided, and the plaintiff's choice of a state forum and state law claims is preserved. Indeed, this is exactly what occurred in the major state case decided under the New York laws at issue. *See Barnes v. Peat, Marwick, Mitchell & Co.*, 42 A.D.2d 15, 344 N.Y.S.2d 645 (1st Dep't 1973). Depending on the progress of the *Litowitz* actions here, the state court judge would undoubtedly give serious consideration to a motion for a stay by these defendants.

For all these reasons, removal of this action is unsupported legally and unjustified from a policy standpoint. Accordingly, the plaintiff's motion to remand is granted on these grounds, and there is no need to consider the additional procedural objections to removal asserted by the plaintiff.

SO ORDERED.

4. For example, it appears that only one state case has been decided under New York's securities anti-fraud statutes. *Barnes v. Peat, Mar-* *wick, Mitchell & Co.*, 69 Misc.2d 1068, 332 N.Y.S.2d 281 (Sup.Ct.1972), *modified*, 42 A.D.2d 15, 344 N.Y.S.2d 645 (1st Dep't 1973).